## THE NEW JERSEY MIDLAND RAILWAY COMPANY v. STEPHEN STRAIT.

1. A railroad company agreed to give its bonds in consideration of certain moneys to be paid in installments, and afterwards, by legislative authority, becoming amalgamated with two other companies, tendered the bonds of the consolidated incorporation and brought suit for the money—*Held*, that such suit would not lie, the consideration offered not being that agreed for.

2. Where money is subscribed to be paid for in a specified mode on call, it must be shown that the call was made by adequate authority, and it must conform to the terms of the subscription.

This was an action on the case, founded on the following agreement:

### COPY OF AGREEMENT.

" The undersigned, for value received, hereby agree with each other, and with the New Jersey, Hudson, and Delaware Railroad Company, that each will pay to the president of said company the amount set opposite to each of their respective names, in installments, to be called for by said company, which installments shall not be larger than ten per cent. each; and such installments shall not be called for at a shorter period than thirty days from each other.

" The undersigned, however, are at liberty to pay the whole, or any part of each of their subscriptions, at any time sooner than called for, as above.

" And the said company agrees, in consideration of such payments, to deliver to each of the subscribers receipts for each payment as made; and when the entire subscription of

any one of the undersigned is paid, to *deliver to such subscriber, bond or bonds of the company,* guaranteed by the New York and Oswego Midland Railroad Company, bearing seven per cent. per annum interest, payable semi-annually, for the amount of such payment; the interest on the bond not to accrue or commence until one-half year after the time of last payment of each subscriber.

" The subscribers hereunto are to pay the sum subscribed by them *only as the work progresses upon the railway of said company, between the village of Bloomingdale and the northern line of Sussex county, near the village of Unionville.*

(Signed) " STEPHEN STRAIT, $500, [and others.]"

By an act of the legislature, approved 17th of March, 1870, the New Jersey, Hudson, and Delaware Railroad Company was empowered to consolidate with " The New Jersey Western Railroad Company" and "The Sussex. Valley Railroad Company," upon certain terms set forth. The new corporation thus to be formed was to be called " The New Jersey Midland Railroad Company," and it was declared and provided that such company should " succeed to the property, rights, powers, privileges, franchises, obligations, and liabilities of the companies so consolidated;" that " all contracts made with either of the aforesaid companies shall be performed and discharged by such consolidated company, and all property, real, personal, and mixed, and all debts, on whatever account, as well as of stock, subscriptions, and other things in action belonging to said corporations, shall be taken and deemed to be transferred to and vested in the company hereby created, without further act or deed." There was, also, a provision for the purchase of the stock of non-assenting stockholders.

The consolidation was effected under this law, and such consolidation was approved by the act of March 31st, 1871. *Pamph. L. of* 1871, *p.* 1093.

The case came before the Supreme Court on a case reserved at the Morris Circuit.

New Jersey Midland Railway Co. v. Strait.

Argued before Beasley, Chief Justice, and Justices Depue and Van Syckel.

For plaintiff, *Potts & Linn.*

For defendant, *James H. Neighbour.*

The opinion of the court was delivered by

Beasley, Chief Justice.   The defendant agreed, in writing, to advance to the New Jersey, Hudson and Delaware Railroad Company the sum of $500, to be paid in certain installments, and the company, on its part, stipulated to deliver to the defendant, when the entire subscription should be paid, its bond or bonds, secured by a specified guaranty for the amount of such payment.   The substantial ground on which the defendant repels the claim made for this money is, that the above-named railroad company has disabled itself from the performance of the contract on its side.   The entire consideration for the promise of the defendant, and which forms the foundation of this action, is the obligation to render, as an equivalent for the money demanded, the bonds of the New Jersey, Hudson, and Delaware Railroad Company, whereas it is insisted the plaintiff offers its own bonds instead of those of the company first named.

Neither the court nor the legislature can alter the bargain between these parties.   The defendant had the right to stipulate for the bonds of a particular company, and it is clear he cannot be required to accept, in lieu of the promised consideraation, the obligation of any other company, no matter how much the latter may exceed in value the former.   There is no legal mode in which the contract of a man can be improved for him against his consent.   As the bond of the contracting company formed the entire consideration for the promise of the defendant, if such company have put it out of its power to render such bond to the defendant, it has destroyed this contract by its own voluntary act, and has, in consequence, discharged the defendant.

This defence was met on the argument by the contention that the New Jersey, Hudson and Delaware Railroad Company had not ceased to exist, but had merely changed its name, and in a manner, the form of its organization. But this view appears to me very unreasonable. The consolidated companies, in the nature of things, cannot be the same as any one of their constituents. Such a company has larger purposes, wider powers, and heavier responsibilities than those inherent in either of its component parts. In the case of *Zabriskie* v. *Hackensack and New York R. R. Co.*, 3 *C. E. Green* 178, the Chancellor decided that an act of the legislature would not legalize the extension of a railroad against the dissent of any stockholder, beyond the bounds designated in its charter. The ground of this judgment was, that to carry the road beyond the prescribed termini introduced an enterprise substantially different from that which the stockholders agreed to undertake. The case cited involved the nice question as to the power of a majority of the stockholders to consent to a change or substitution of the corporate objects, and its only importance in the present inquiry consists in its expression of the opinion that an authority to extend the railroad was a substantial variation of the purposes of the company as originally incorporated. But in the present instance, as it appears to me, the change has been so great that, at all events, as between the company and a stranger to its organization, the new undertaking must be considered as essentially different from the old one. Almost every material circumstance on which the defendant must have relied in forming a judgment as to the safety of making his promise of a loan has been altered. The length of the road, the nature of the ground to be traversed, and the amount of the outlay, were the ingredients of the enterprise proper to be considered in forming an opinion as to the probable success of the project, and all these have been varied in material particulars. It seems undeniable that the bond of a company which designs to build a road of ten miles is, or may be, an entirely different security from the bond of a company having in view the construction

of a road a hundred miles in length. For present purposes, it is enough to know that such bonds are different things, because the defendant had the undoubted right to bargain for either of them, and if they are not identical in a legal point of view, he cannot be compelled to take the other against his will. He bargained for the bond of the New Jersey, Hudson and Delaware Railroad Company, and the bond of the plaintiff, a company constructed out of the company just named and two other companies, cannot, without his consent, be substituted for the consideration specified.

If it was deemed important to hold these subscribers to their engagements, the separate existence of the New Jersey, Hudson and Delaware Railroad Company should have been preserved, so that its bonds could have been rendered according to its agreement. This has not been done, and the consequence is, there is not the ability to perform the contract on the part of the company. This, of necessity, avoids the agreement. The rule is, that a party who disables himself from rendering the agreed consideration, cannot require the performance of a promise which rests on such consideration. This doctrine formed the ground of decision in the following cases: *Keys* v. *Harwood*, 2 *C. B.* 905; *Planche* v. *Colburn*, 8 *Bing.* 14; *Frost* v. *Clarkson*, 7 *Cow.* 24; *Newcomb* v. *Brackett*, 16 *Mass.* 161.

But the plaintiff's case is also fatally defective on another point. There was no proof of any legal call made on the defendant to pay the moneys according to the contract. The defendant agreed to pay his subscription in installments " to be called for by said company, which installments were not to be larger than ten per cent. each; and such installments were not to be called for at a shorter period than thirty days from each other." There was evidence that certain notices were sent around to various parties in the neighborhood of the residence of the defendant, and a copy of a notice of this class was produced; but the testimony failed to show that one of such notices came to the hands of the defendant. That he received some kind of a notice to pay his subscriptions was

New Jersey Midland Railway Co. v. Strait.

admitted by him, but what were the requisitions of such notice did not appear. It was an indispensable part of the plaintiff's case to show a demand of this money in conformity with the terms of the defendant's stipulations to pay it, and the circumstances exhibited did not warrant the conclusion that the paper received by the defendant was of the required character.

And even if it had appeared that the defendant received a copy of the notice which is now before us, I should still think the plaintiff's case defective in this particular, for the notification would be insufficient in two fundamental respects : first, there is an entire absence of all proof, with regard to the authority by which the call for this money was made. The notice itself declares that such call was made by a resolution of the board of directors, but such recital is no proof of the fact. It was incumbent on the plaintiff to manifest a call for this money, before suit, by the proper corporate authority. This was not done at the trial.

But again. This call, if authoritatively made, was not in accordance with the contract. By the terms of the subscription, the installments could not be demanded at a shorter period than thirty days from each other. The call, as recited in the notice, is for "ten per cent. of such subscription, to be paid on the first Monday of each month, for the period of ten months, commencing with the first Monday in March." There are not thirty days between each of these periods. This, I think, is an incurable defect in the call itself.

On all these points the non-suit was right.